No. 2616

Second Circuit

MANES v. LOUISIANA CENTRAL LUM-
BER COMPANY

(May 7, 1926, Opinion and Decree)

(*Syllabus by the Editor.*)

1. Louisiana Digest—Master and Servant
   Par. 160 (j).

The proof in a Workmen's Compensation
case under Act No. 20 of 1914 clearly
shows that although the plaintiff did
actually lift a Ford automobile to
swing it on the rails and felt a pain
across his chest in the region of his
heart his illness nevertheless was
caused by a progressing disease of the
heart from which plaintiff had suf-
fered many years.

Appeal from the Eighth Judicial
District Court of Louisiana, Parish of Cald-
well, Hon. F. E. Jones, Judge.

Action by Sam J. Manes against Louisi-
ana Central Lumber Company for compen-
sation under the Workmen's Compensa-
tion Act No. 20 of 1914. There was judg-
ment for plaintiff and defendant appealed.

Judgment reversed.

Long and McSween, of Shreveport, at-
torneys for plaintiff, appellee.

Thornton, Gist and Richey, of Alexan-
dria, attorneys for defendant, appellant.

WEBB, J. This suit is brought under
the employers' liability act. for injuries.
alleged to have been received by the plain-
tiff while in the employ of the defendant.

He alleges:

"Your petitioner, in the course of his
work and arising out of the same, under-
took to lift and turn around a Ford car
in the course of supervising, looking after
and inspecting for the maintenance and
repair of tram roads which the said de-
fendant used for their logging and saw-
mill purposes, and by reason of the same
petitioner was so strained and exerted that
he was caused serious injury to the area
in and about his heart, producing a di-
lated and non-compensative heart and a
weakening of the muscles, linings and
structures of the said heart and in and
about the same, thereby lowering peti-
tioner's vitality and strength, causing va-
rious impairments, weaknesses and disor-
ders to the nerves, ligaments, muscles and
other vital functions and organs of peti-
tioner's body and system, and particularly
in and about the area of the heart, lungs,
chest and other vitals of petitioner's body,
so that as a result of the same, from the
date of said injury, at this time and for
all time hereafter, the petitioner cannot
do or perform any work or labor of any
reasonable kind or character, etc."

The defendant excepted that the petition
failed to state a cause of action, and at the
same time answered denying the material
allegations of the petition upon which
plaintiff based his right of recovery.

On trial in the district court judgment
was rendered in favor of the plaintiff and
defendant appealed.

OPINION

The evidence establishes that plaintiff
had been afflicted with a progressive dis-
ease of the heart for many years, and

that it had reached a critical stage prior to the date of the alleged accident.

The theory upon which plaintiff contends he should recover is that, prior to the alleged accident, his condition was not such as to prevent him from working; that nature had taken care of the diseased condition of his heart by some great change, which is referred to as "compensation", whch had enabled him to perform the services incident to his employment, but that in lifting and turning the automobile this natural process of "compensation" had been disturbed and would no longer take place and that he was thus disabled.

The plaintiff's case is dependent upon proof of the following facts:

First, that he lifted and turned the car, and,

Second, that he received a strain and that there was a rupture or 'break in "compensation" as the proximate result of the strain.

The only one of these facts which was susceptible of direct contradiction relates to whether or not plaintiff lifted and turned the car, as the question as to whether he received a strain is dependent upon a subjective symptom and the effect of the strain; whether or not it caused a rupture is dependent upon circumstances or conditons following.

The plaintiff's testimony in support of his claim is in part as follows:

"Q. What happened to you in the course of your work in September of this year, (1925) ?

"A. On the 28th day of September, I was turning around a Ford and got a strain in turning that car around in my left breast which was caused by picking up that car* * * ."

He further said that after the car had been placed on the rails, which was about seven o'clock, in the morning, he and a negro, George Starks, rode out over the line for a distance of about eighteen miles to Camp No. 24 where Curtis Black joined them, and from there to the end of the line; that he became hoarse at about ten o'clock and was feeling so ill when he returned to the camp he went to the home of his sister-in-law, Mrs. Williams, at about 2 o'clock, remaining there until four o'clock, when he returned home and called Doctors Gardon and Hines, and that he spit up blood and was confined to his room for about four days.

George Starks, who was present when plaintiff claims to have lifted the car, was called by plaintiff and corroborated plaintiff's statement as to plaintiff having swung the car upon the rails; however Starks was impeached by proof of a prior contradictory signed statement, and he, Starks, on being called by the defendant, when the cause was reopened, said that he did not remember anything about the incident.

It appears that plaintiff at the time he called Starks to the witness stand, knew of the version which Starks had made in the signed statement, having had a prior conversation with him in relation thereto, in which conversation plaintiff made a veiled threat against Starks if he persisted in the narartive of circumstances contained in the signed statement.

The evidence further shows that the car which plaintiff claims to have lifted and

turned, was a Ford automobile which had been equipped for use on the rails, and that when properly adjusted upon a level track it required very little physical effort to swing it on the rails, and it is admitted that the car had been brought to the track (which the evidence shows was level) and adjusted by Starks, but plaintiff says that it required considerable effort for him to swing it.

It further appears that Curtis Black, who met plaintiff at Camp No. 24 at about 8 o'clock and remained with him until noon, did not notice that plaintiff was ill, and was not informed of the alleged accident, although he inquired as to plaintiff's health; and it also appears that plaintiff did not mention the alleged accident to the physicians who were called to attend him after he returned home.

It further appears that the manager of the defendant company had a conversation with plaintiff on the 26th of September in which he told plaintiff that he would be temporarily discharged on the 1st of October and that on the 1st of October or soon after the alleged accident plaintiff was notified he would be let out, and plaintiff, after being so notified, called upon defendant's officers but did not notify them of the alleged accident, although he says he called upon them with that object in view.

As to whether or not the collapse of the plaintiff was due to the alleged accident, the evidence establishes that the disease with which he was afflicted had for some months prior to September 28, 1925, reached a stage where he might suffer a collapse with or without physical exertion, and he had in fact suffered similar attacks prior to that of September 28th on at least two different occasions; and as to whether or not "compensation" was broken at the time of the trial, the evidence is conflicting, one of the physicians stating that there was no "compensation" and another that there was fairly good "compensation".

Giving a liberal construction to the evidence, in favor of the plaintiff, ignoring the circumstances which might be considered as intention suppression of the testimony of Starks, and conceding that plaintiff did lift the car and swing it on the rails, and that he did feel a pain across his chest in the region of his heart, we do not think that the evidence establishes that there was a strain or rupture, but, on the other hand, we are of the opinion that the evidence indicates, if it does not establish that the illness of the plaintiff was due to the disease with which he was afflicted.

It is therefore ordered, adjudged and decreed, that the judgment appealed from be annulled, avoided and reversed, and plaintiff's demands be rejected at his cost.